IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM J. CULHANE, JR., | ) |
| Plaintiff, | ) 8:10CV3130 |
| v. | ) |
| PRINCIPAL LIFE INS. CO., and WELLS' DAIRY, INC., | ) MEMORANDUM AND ORDER |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for summary judgment, Filing Nos. 16, 25, and 27.[1] This is an action for judicial review of a benefits determination under the Employee Retirement Income Security Act (hereinafter, "ERISA"), 29 U.S.C. § 1101 *et seq.* The plaintiff and defendant Wells' Dairy each move for summary judgment in their favor based on the administrative record. Defendant Principal Life Ins. Co. ("Principal") argues that it is not a proper party defendant to this action. The plaintiff concedes that Principal is not a proper party defendant and, accordingly, Principal's motion for a summary judgment of dismissal will be granted.

I. FACTS

The administrative record has been submitted to the court. See Filing No. 19, Index of Evid., Attachments 4-7, Ex. 4, Admin. R., Parts 1-4 (Electronic Case Filing ("ECF") Header: Doc ## 19-4, 19-5, 19-6, 19-7, Page ID ## 99-404). The uncontroverted evidence shows defendant Wells' Dairy, Inc. (hereinafter "Wells' Dairy") offers its employees

---

[1] Also pending is defendant Wells' Dairy's motion to strike certain documents in the administrative record that relate to settlement negotiations, Filing No. 23. Because those documents are not relevant to the issues before the court, the court did not consider them in connection with the resolution of the summary judgment motions. Accordingly, it is not necessary to strike the documents and the defendant's motion to strike will be denied as moot.

healthcare coverage under the "Blue Bunny Salaried Exempt and Non-Exempt Employees Medical and Prescription Drug Coverage Plan" ("the Plan").  *Id.*, Attachment 4, Ex. 4, Admin. R., Part 1 (Doc # 19-4) at WD 1.[2]  Wells' Dairy is both the Plan sponsor and the plan administrator.  *Id.*, Attachment 5, Ex. 4, Admin. R. Part 2 at WD 81.  Wells' Dairy operates the Plan on a self-funded basis and has entered into an agreement whereby it has delegated certain ministerial and non-discretionary duties to Principal.  *Id*. at WD 90-110.  Principal acts as a "claims administrator," defined in the Plan as "any entity authorized by the Plan administrator to process claims for benefits under the Plan."  *Id.* at WD 77.  Wells' Dairy retains "complete discretion to construe or interpret all provisions, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided."  *Id.*, Attachment 4, Admin R. Part 1 at WD 3.  The Plan provides that the decisions of the Plan Administrator are to be "controlling, binding, and final" and the Plan Administrator "shall be deemed to have exercised its discretion properly unless it is duly proved that the Plan Administrator has acted arbitrarily and capriciously."  *Id*.

Under the Plan, Wells' Dairy pays Comprehensive Medical Benefits for "Covered Charges," as described in the Plan's "Summary of Benefits" section.  *Id*. at WD 35.  The Summary of Benefits section states that benefits are payable for "Medical Expenses."  *Id*. at 7.  Covered Charges for Medical Expenses are the actual costs charged for "Medically Necessary Care. . . ."  *Id*. at 35.  The Plan defines "Medically Necessary Care" as any "'Treatment or Service' that is prescribed by a Physician and required for the screening, diagnosis or treatment of a medical condition which is consistent with the diagnosis or

---

[2]Page references are to page numbers at the bottom right corner of the document).

symptoms, not excessive in scope, duration, intensity, or quantity, the most appropriate level of services that can safely be provided, and determined by the Plan Administrator or 'Generally Accepted.'" *Id.*, Attachment 5, Admin. R., Part 2 at WD 86.  The plan provides that "Covered Charges will be the actual cost charged to you or one of your Dependents for Medically Necessary Care . . . for" several listed procedures including "surgical removal of impacted teeth on an outpatient basis.  Inpatient removal is covered only when a medical condition (such as hemophilia) requires hospitalization." *Id.,* Attachment 4, Admin. R., Part 1 at WD 4, WD 36.

Under the heading "Limitations," the plan provides "Comprehensive Medical Covered Charges will not include and no benefits will be paid for:  . . . Dental Services and materials, including dental implants (except as described under Covered Charges)." *Id.* at WD 43.  The Plan defines "dental services" as follows:

> Dental Services means any Treatment or Service provided to diagnose, prevent, or correct:
>
> - periodontal disease (disease of the surrounding and supplemental tissues of the teeth, including deformities of the bone surrounding the teeth); and/or
>
> - malocclusion (abnormal positioning and/or relationship of the teeth); and/or
>
> - ailments or defects of the teeth and supporting tissue and bone (excluding appliances used to close an acquired or congenital opening.  However, the term Dental Services will include treatment performed to replace or restore any natural teeth in conjunction with the use of any such appliance.)

*Id.*, Attachment 5, Admin. R., Part 2 at WD 80.

The record shows that the plaintiff underwent surgery at Alegent Hospital to remove a large maxillary cyst (a "left maxillary cyst excision") pursuant to the recommendation of

his physician, Dr. Valmont Desa, D.D.S., M.D., an oral and maxillofacial surgeon. *Id.* at 108. The maxillary cyst occupied nearly the entire left maxillary sinus cavity, from the top of plaintiffs jaw "to the floor of the orbit" (the left eye socket). *Id.*, Attachment 6, Admin. R., Part 3 at 194. Dr. Desa prescribed surgical removal of the cyst and found that the surgery should be preformed at a hospital with the plaintiff under general anesthesia because of the "extent" of the "lesion." *Id.*

Shortly before the surgery, the plaintiff and his healthcare providers submitted claims under the Plan for the anticipated charges associated with the surgery to remove the tumor or cyst. *Id.*, Attachment 5, Admin. R., Part 2 at WD 109-110, 128-29, 133; Attachment 6, Admin. R., Part 3 at 161. The record indicates that coverage was sought for the procedure noted as "excision of benign tumor or Cyst of maxilla or zygoma by enucleation and curettage" and the primary diagnosis was noted as an "odontogenic cyst." *Id.*, Attachment 5, Admin. R., Part 2 at WD 109, 112. The claims records that relate to the predetermination review on September 23, 2008, contain the notation "Case Not Medically Necessary." *Id.* at WD 112. Claims records also include cryptic notations showing benefits were not available for facility or general anaesthesia for cyst removal, but if tooth 16 were removed Principal could allow for removal of tooth since impacted but would not allow facility or general anesthesia because the benefits criteria were not met. *Id.* at WD 109. Correspondence on that date to Dr. Desa from Patricia Deharty at Principal states:

> The policy or plan does not require a predetermination of benefits for the above service. However, we have reviewed the information that was provided. The medical policy or plan limitations exclude coverage for facility and general anesthesia charges that are related to a non-covered dental procedure. As a result of our review, we have determined that due to the policy plan limitation, no benefits will be payable for the above service

> including hospital charges.  Please see the Limitations section of your booklet for more information regarding policy limitation.

*Id.* at 128.  A telephone note in the claims file dated 9/23/08 also indicates that Deharty spoke to Dr. Desa and:

> advised the cyst is [documented] as an odontogenic cyst. In order to [consider facility/general anesthesia] it must be a [covered dental service] & then criteria must be met.  Advised odontogenic cysts are not [considered covered dental service]. . . Advised if this is indeed non-odontogenic cyst—then criteria must be met advised if non-odontogenic cyst—then we [would] need [documentation] from both [dentist] and treating physician stating that [Culhane] has a medical condition that [would] create significant or undue medical risk in the course of delivery of [treatment or] surgery if not rendered in [hospital or ambulatory surgical facility].  Understood.  He will send in [additional information] after [surgery].  Deharty [R.N.]

*Id.*, Attachment 6, Admin. R., Part 3 at 186-87.  Other claims documents in the file show that Principal also informed the plaintiff "our records indicate that you don't have dental coverage.  For that reason, we're unable to pay for dental services."  *Id.,* Attachment 5, Admin. R., Part 2 at 15; *id.,* Attachment 7, Admin. R., Part 4 at 272.

Because Wells' Dairy denied coverage for the treatment plaintiff received to remove the cyst, plaintiff paid $10,315.10 to his medical care providers to satisfy their claims based on the care provided. Filing No. 19, Attachment 2, Ex. 2 at 1.

The Plan provides that an individual must follow a mandatory administrative appeals process to challenge the denial of a claim.  *Id*., Ex. 4, Part 1 at 70.  The plaintiff appealed the determination and a telephone memo indicates that Principal requested information on October 16, 2008.  *Id*., Attachment 7, Admin. R., Part 4 at 276.  Claims file records contain a notation dated October 30, 2008, stating "deny as dental in nature" and "denied due to dx [diagnosis of ontogenic cyst]."  *Id*.

The medical records submitted by the plaintiff and his physicians in connection with the appeal show that a review of an I-CAT scan showed "a large cystic appearing lesion extending into the maxillary sinus all the way to the orbital floor and into the nasal osteum." *Id.*, Attachment 4, Admin. R., Part 1 at WD 176.  Records from a consultation with Dr. Desa indicated that the cyst had "eroded the lateral posterior aspect of the maxilla and has resorbed teeth #s 14 and 15.  Tooth # 16 is mesioangularly impacted high within this lesion." *Id*.  During the appeals process, Dr. Desa, an oral/maxillofacial surgeon, submitted a letter stating that the service being provided was medical, not dental.  *Id.*, Attachment 6, Admin. R., Part 3 at 194.   He wrote:

> Mr. Culhane had a large cyst invading the left maxillary sinus that essentially occupied the entire sinus cavity to the floor of the orbit. . . .  Despite having an 'odontologic/tooth based etiology' this is not a dental procedure. A cyst extending through the entire maxillary sinus to the orbital floor with the erosions of the bony walls of the maxilla would be considered a medically necessary procedure and I would request a review by a maxillofacial surgeon.

*Id*.

By letter dated January 12, 2009, Principal upheld its initial denial of benefits, stating that certain requested information had not been received and that the services were "dental in nature and not covered."  *Id.,* Attachment 7, Admin. R., Part 4 at 297-98.  The letter of January 12, 2009, further provided that plaintiff "may request a voluntary appeal by sending a request, including additional information" to Wells' Dairy.  *Id.*  On January 23, 2009, Wells' Dairy acknowledged that plaintiff's "Voluntary ERISA appeal [had been] received." *Id.,* Attachment 6, Admin. R., Part 3 at 202.  On January 30, 2009, March 3, 2009, and March 4, 2009, Wells' Dairy requested additional information to complete its second review of plaintiff's claim.  *Id., Attachment 6, Admin. R., Part 3* at 219; Attachment 7, Part 4 at 272,

301. On three separate occasions, December 1, 2008, January 23, 2009, and March 27, 2009, Dr. Desa provided the requested information to Principal. *Id.,* Attachment 6, Admin. R., Part 3 at 194, 207, Attachment 7, Admin. R., Part 4 at 232.  Dr. Desa again wrote "[t]his would be a procedure considered covered under medically necessary based on the location, the size of the lesion and the proximity to vital structures, I would request review by an oral maxillofacial surgeon if you feel this is not a covered benefit." *Id*.  Principal's January 29, 2009, records indicate that the information requested had been received. Attachment 6, Admin. R., Part 3 at 206.

Records submitted in the course of the appeal process include a CT scan report that shows:

> A well defined corticated pericoronal radiolucency is seen encroaching upon the left maxillary sinus.  The lesion is nearly filling the sinus with the exception of crescent shaped residual sinus between the orbital floor and the roof of the lesion.  The lesion is protruding slightly through the left ostium into the nasal cavity.  The anterior lateral, posterior lateral and the posterior walls of the left maxillary sinus are expanded. The posterio-lateral wall is 2mm from the coronoid process.  Posterior wall expansion appears lateral to the lateral pterygoid plate.  The expanded cortical plate is thinned and dehiscent in some areas. The lesion does not invaginate the root of zygoma. The lesion contains #16 horizontally displaced into the anterior recesses of the left maxillary sinus. # 14 and # 15 show marked root resorption. The nasal and orbital contents are within the range of normal on left side. The left nasolacrimal canal  is patent.

Attachment 7, Admin. R., Part 4 at 275.  His impression was of a follicular odontogenic cyst.  *Id*.  A surgical pathology review by Dr. Rouse revealed that the plaintiff's diagnosis was a "benign cyst with inflamation," and Dr. Rouse commented:  "The histologic features are those of a benign cyst showing areas of squamous metaplasia and fibrosis, along with cholesterol cleft formation." *Id.* at 277.  He noted he "favor[ed] a periapical cyst" and stated that "[a]t the request of Dr. Desa, this case will be sent to the oral pathology department

7

at the College of Dentistry in Lincoln, NE for a second opinion.  Those results will be issued in an addendum report."  *Id.*  Dr. Rouse also noted, under "Diagnosis," a "cyst with associated tooth/left maxilla." *Id*.  The referenced addendum report states: "Dentigenerous cyst." *Id.* at 278.  The second opinion states "Microscopic impression was fibrocollagenous cystic structure lined by non keratinized stratified epithelium of varied thickness."  *Id*. Medical records also show that findings after surgery showed a skin erosion of anterior maxillary wall, fracture of wall, and extension of cyst into lateral nasal wall.  *Id*. at 289.

Records of the appeal process show that the information was sent to a consultant dentist by a nurse reviewer who noted that the diagnosis was a "developmental odontogenic cyst," and asked the question "[c]an this surgery and the associated charges from facility, pathology and anesthesia be covered under the medical plan?"  *Id*. at 264-65. The consultant responded "[s]ome of pathology is dental, therefore it is a dental service." *Id*. at 265.

Defendant maintained its position that plaintiff is not entitled to benefits because plaintiff's surgery was for "Dental Services" and thus, not covered by the Plan.  *Id.* at 267. In a letter dated March 16, 2009, Principal informed plaintiff that it had reviewed the additional information, that Principal had completed its review process, and that Plaintiff "may choose to seek civil action." *Id.* at 302.  Plaintiff again appealed defendant's decision on April 6, 2009.  *Id*. at 231.  Following that appeal, Principal asked for a "Peer Review" of Plaintiffs claim on June 1, 2009."  Attachment 6, Admin. R., Part 3 at 224.  The review requested a determination of whether the "cyst removed on 09/25/2008 [would] be considered a cyst of 'dental origin.'" *Id.* at 224-25.  The Peer Review Report states that the

"cyst would be considered a cyst of dental origin." *Id.* Thereafter, Wells' Dairy upheld its decision to deny plaintiff benefits under the Plan. *Id*. at 229.

## II. LAW

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. See 29 U.S.C. § 1132(a)(1)(B). The first issue to consider in an ERISA case is the appropriate standard of review. *See, e.g.,* Tillery v. Hoffman Encls., Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). Where a plan gives the administrator discretionary authority to determine eligibility for benefits, the court reviews the administrator's decision for an abuse of discretion. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1996), *abrogated on other grounds by* Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). In conducting judicial review under the abuse of discretion standard, the reviewing court is limited to review of the evidence that was before the plan administrator when the final decision was made. Oldenburger v. Central States S.E. and S.W. Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir. 1991); *see also* King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (stating that "[w]hen reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales'"). *Id*. (quoting Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999)).

When the entity that administers the plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," a conflict of interest exists. *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 112 (2008). This conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Id.* (noting that

trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion). Under *Glenn*, courts must analyze the facts of the case at issue, taking into consideration not only the conflict of interest, but also other factors that might bear on whether the administrator abused its discretion. *Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 775 (8th Cir. 2009).

The standard requires a court "to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Id.* at 2351 (noting that a conflict of interest should be more important in cases where the insurer has "a history of biased claims administration"). The conflict "should be given less weight '(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.'" *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010). A failure to follow claims procedures is another factor to consider, as is an administrator's interpretation of a term that is clearly at odds with the clear language of the plan. *Chronister*, 563 F.3d at 776. Although a causal connection between the conflict and the decision might be important in determining the appropriate level of scrutiny for a plan administrator's decisionmaking, such a connection is not required. *Glenn*, 554 U.S. at 116.

"In sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse

10

decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 1000 (8th Cir. 2005) (en banc). Substantial evidence is "'more than a scintilla but less than preponderance.'" *Khoury,* 615 F.3d at 952 (quoting *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008)).

Typically, where a benefit plan gives the administrator discretion to interpret uncertain terms in the plan, the court's analysis begins with the consideration of whether the administrator's interpretation of the terms is "reasonable." *King,* 414 F.3d at 1001. Five factors guide the court's analysis of whether an administrator's interpretation of uncertain terms in a plan is reasonable: 1) whether the administrator's interpretation is consistent with the goals of the plan; 2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; 3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether the administrator has interpreted the relevant terms consistently; and 5) whether the interpretation is contrary to the clear language of the plan. *Finley v. Special Agents Mut. Ben. Ass'n,* 957 F.2d 617, 621 (8th Cir. 1992).

III.   ANALYSIS

The court finds the administrator abused its discretion in denying coverage for the plaintiff's claim. The plaintiff's condition does not fit under the Plan's own definition of dental services. The medical evidence submitted to Principal and relied on by Wells' Dairy in making its final decision shows that the tumor or cyst was neither periodontal disease, a malocclusion, or an ailment or defect of the teeth and surrounding tissue and bone. The growth had invaded the plaintiff's maxillary sinus up to his eye socket and encroached and

eventually fractured his nose. Medical evidence supported the conclusion that surgery was medically necessary and should be performed in a hospital because of the nature and extent of the lesion. A Board-certified oral and maxillofacial surgeon stated that the procedure was medical, not dental, and there is no evidence in the record that contradicts that conclusion. The defendant's reliance on medical opinions that the tumor was "dental in origin" is misplaced. The Plan did not exclude coverage for treatment of conditions that were dental in origin, rather it excluded coverage of dental services defined as treatment for "an ailment or defect of the teeth and surrounding tissue and bone." The plaintiff's condition became an ailment of his maxillary sinus and nose.

Moreover, the Plan provides a separate, enumerated grant of coverage for outpatient removal of impacted teeth and inpatient surgical removal when a claimant's medical condition required hospitalization. The defendant was provided medical evidence that the cyst contained an impacted tooth (or teeth) as well as evidence that hospitalization was required because of the size of the lesion. Accordingly, the court finds the defendant's interpretation of the Plan's terms was not reasonable and the denial decision is not supported by substantial evidence.

The defendant's financial conflict of interest as the entity evaluating and paying the claim is a factor that the court has considered in making this determination. Wells' Dairy has an incentive to deny claims since the benefits are paid form its funds. There is no evidence that the employer had taken any active steps to reduce potential bias or to promote accuracy of claims determinations. Principal's referral of the claim to peer-review does not provide any such insulation from liability because the issue referred to the peer-review physician did not accurately frame the issue. The review was conducted as if the

Plan's definition of "dental service" was "dental in origin," and not an ailment of teeth and surrounding tissues.  Under the Plan definitions, the origin or etiology of the condition was not relevant.  Also, Principal's reviewing nurse posed a coverage question to a dental professional, a matter clearly outside the consultant's expertise.

Moreover, there were several procedural irregularities revealed in the appeals process.  First, Principal repeatedly asked for additional information that it already had. Over the course of the appellate review, it gave differing rationales for the denial; at one time acknowledging that coverage would be provided under the "impacted tooth" provision, but basing the denial on the plaintiff's ostensible failure to meet "criteria" showing that a "condition" required inpatient surgery, later basing the denial on the type of tumor and later settling on the "dental in origin" rationale.  The court finds the administrator abused its discretion in denying health benefits to the plaintiff.  Accordingly,

IT IS ORDERED:

1.  Plaintiff's motion for summary judgment (Filing No. 16) is granted.

2.  Defendant Prinicipal Life Insurance Company's motion for summary judgment (Filing No. 27) is granted.

3.  Defendant Wells' Dairy, Inc.'s motion for summary judgment (Filing No. 25) is denied.

4.  Defendant Wells' Dairy, Inc.'s motion to strike (Filing No. 23) is denied as moot.

5.  Defendant Principal Life Insurance Company is dismissed as a party defendant.

6.  Judgment will entered in favor of the plaintiff and against defendant Wells' Dairy in the amount of $10,315.10, plus prejudgment interest at the legal rate from and after

September 23, 2008, plus costs and attorney fees in an amount to be later determined by the court, upon resolution of the fees issue.

7. The plaintiff shall submit his motion for attorney fees within 14 days of the date of this order; defendant Wells' Dairy shall respond thereto within 7 days thereafter.

8. The plaintiff shall file a bill of costs with the Clerk of Court in accordance with local rules.

DATED this 8th day of August, 2011.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.